**WESLEY–JESSEN CORPORATION, Plaintiff,**

v.

**PILKINGTON VISIONCARE, INC. and Pilkington Barnes–Hind Ltd., Defendants.**

**Civ. A. No. 93–268–RRM.**

United States District Court, D. Delaware.

Oct. 25, 1993.

See Also: 863 F.Supp. 186.

Robert K. Payson and William J. Marsden, Potter Anderson & Corroon, Wilmington, DE, John O. Tramontine, Douglas J. Gilbert, Donald K. Reedy, Fish & Neave, New York City, for plaintiff.

Robert W. Whetzel, Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, M. Scott Donahey, David N. Schachter, James M. Smith, Holtzman, Wise & Shepard, Palo Alto, CA, for defendants.

## OPINION

McKELVIE, District Judge.

This is a patent infringement case. In a complaint filed on June 8, 1993, Wesley–Jessen Corporation alleges Pilkington Visioncare, Inc. and Pilkington Barnes–Hind, Ltd. are infringing three of its patents for colored contact lenses and methods for making those lenses. The case is currently scheduled for a two week jury trial beginning on Monday, June 6, 1994.

Pilkington Barnes–Hind, Ltd. has moved to be dismissed for lack of personal jurisdiction and Pilkington Visioncare has moved to transfer the balance of the claims to the Northern District of California. This is the Court's decision on the motion for a change of venue. Concurrently with this Opinion the Court is issuing an Opinion on the motion to dismiss.

*CHANGE OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)*

■ Section 1404(a) of Title 28 of the United States Code reads as follows:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As the plaintiff's choice of forum is the paramount consideration in the determination of any transfer request, a party seeking

a transfer has the burden of establishing that a balancing of the interests identified in the statute tips strongly in favor of a transfer. *Shutte v. Armco Steel Corporation*, 431 F.2d 22 (3rd Cir.1970). *See also Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

*FACTS*

The following is a brief review of the information in the record relevant to a balancing of the interests identified in the statute.

A. *The Parties*

Wesley–Jessen is a Delaware corporation engaged in the manufacture and sale of contact lenses and is the assignee of U.S. patent Nos. 4,582,402, 4,704,017 and 4,720,188, which relate to the development of a contact lens that is "tinted" by applying a pattern of colored dots to the lens surface. It markets its colored contact lenses made pursuant to the patents as "Durasoft 2 Colors," "Durasoft 3 Colors," and "Complements."

Wesley–Jessen's executive offices and marketing departments are in Chicago, Illinois. It manufactures its patented lenses in Puerto Rico and Illinois and has its research and development departments in Des Plaines, Illinois. Wesley–Jessen is a wholly-owned subsidiary of Schering Corporation, which is headquartered in New Jersey. Schering is, in turn, a wholly owned subsidiary of Schering–Plough Corporation, which is also headquartered in New Jersey.

Pilkington Visioncare ("Visioncare") is a Delaware corporation that sells a complete line of eye care products, including glasses, contact lenses, cleaning solutions and other related supplies. Visioncare has developed and markets its own line of tinted contact lenses under the brand name "Natural Touch." Visioncare's corporate headquarters are in Menlo Park, California, and its primary research, development, marketing, sales and administrative operations are located in Sunnyvale, California.

Visioncare is an indirectly wholly owned subsidiary of Pilkington PLC, a United Kingdom corporation. Pilkington Barnes–Hind, Ltd. is an indirect, wholly owned subsidiary of Pilkington PLC. Its headquarters are in Southampton, England.

Visioncare's process for entrapping dyes in the lens material was developed in Sunnyvale, California. Pilkington Barnes–Hind, Ltd. manufactures its Natural Touch lenses in England.

B. *Witnesses and Access to Evidence*

Visioncare's scientific, testing and research records relating to the development of the Natural Touch lenses are in Sunnyvale, and the principal developers of the lens method and other potential witnesses either are employed at Visioncare's Sunnyvale facility or reside in California.

The bulk of Wesley–Jessen's documents are stored at its counsel's offices in New York. The inventor of the patents-in-suit is retired and lives in New Jersey, as does the attorney who prosecuted the patents-in-suit and the former vice-president of sales and marketing, both of whom now work for Schering–Plough.

C. *Other Matters Relevant to the Interests of Justice*

The parties have identified three other factors they contend the Court should consider in weighing whether or not granting the motion would be in the interests of justice. First, the Plaintiff asserts that the Court has some familiarity with the subject matter of this action, as the patents-in-suit were the subject of a prior lawsuit Wesley–Jessen brought in this district. *See Wesley–Jessen Corporation v. Ciba Vision Corporation*, C.A. No. 90–663–RRM. That case was settled prior to the pre-trial conference. Second, according to the Administrative Office of the Courts' Judicial Workload Schedule, for the period ending September, 1992, there were an average of 441 cases pending per judgeship in the Northern District of California, and only 227 per judgeship in Delaware. Third, according to those statistics, the median time to trial for civil cases in the Northern District for that time period was 20 months, compared to 19 months in Delaware.

## DISCUSSION

### I. Balancing the Convenience of the Parties and Witnesses

■ Visioncare is headquartered in California, and its documents and most of the fact witnesses it expects to call to testify at the trial are there. It argues that it would be much more convenient for it to litigate and try this case in California, rather than in Delaware. Visioncare also argues that Wesley–Jessen is unable to counterbalance these facts by showing that it would be more convenient for Wesley–Jessen to litigate and try this case in Delaware, rather than in California.

For three reasons, the Court finds Visioncare has failed to show that the convenience of the parties and witnesses favors a transfer of this action from Delaware to California. The first reason relates to Visioncare's status as an enterprise engaged in business throughout the United States. If Visioncare were a local or regional business that targeted a market in San Francisco or on the West Coast, it might be able to identify particular and unique problems that a smaller, local business would have in defending itself in a forum that is on the other side of the country. For example, a smaller management team may find it difficult to do business throughout different time zones and at greater distances than it had otherwise anticipated. As Visioncare is a substantial corporation that operates in the national market place and as it has developed its business in anticipation of doing business around the country, it has not been able to identify any unique or unusual burden that this litigation places on its business operations.

■ A second reason for finding Visioncare has failed to show that the convenience of the parties and witnesses favors a transfer of this action from Delaware to California relates to Visioncare's status as a Delaware corporation. In some senses, Delaware is Visioncare's home. It is, for example, treated as a citizen of this state for the purposes of determining jurisdiction and venue. In developing their business plans, managers may not be able to anticipate having to defend litigation in all of the states where their corporation does business. They should, however, expect that the corporation may have to respond to litigation both at their principal place of business and in their state of incorporation. Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient. Visioncare should expect litigation in Delaware courts, and it has not shown that litigating this case here will be unusually burdensome or oppressive. *Critikon v. Becton Dickinson Vascular Access*, 821 F.Supp. 962 (D.Del.1993).

A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum. Computers, modems, scanning machines, photocopiers, facsimile machines, video tapes, video discs, CD ROMs and express mail services have changed dramatically how we store, produce and exchange information. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of the documents or things on which the information is recorded and can be transferred, and have lowered the cost of moving that information from one place to another. The lawyers in this case know that within a matter of minutes they can prepare a paper in California, serve it on counsel in New York, file it with the Clerk in Delaware, and deliver it to the Court for a telephone conference call linking lawyers in three or four different cities.

While these technological changes have not reduced the potential inconvenience to witnesses in attending trials far from home, they do offer some additional options the parties can look to in easing the expected burdens on a witness. For example, parties now routinely offer testimony at trial by videotape. In this case, Visioncare has not identified any circumstance with any particular witness or group of witnesses that suggests proceeding with a trial in Delaware would be particularly inconvenient for a witness or a group of witnesses.

As Wesley–Jessen has shown that it would be more convenient for it to litigate this case in Delaware, and as Visioncare has not

shown that the balance of convenience of the parties is strongly in favor of defendant, this factor suggests the plaintiff's choice of forum should not be disturbed.

## II. *The Interests of Justice*

 Visioncare argues that a transfer would serve the interests of justice because it would substantially reduce its costs of litigation without adding to Wesley–Jessen's costs. Wesley–Jessen has argued that overall costs would not be reduced substantially if the Court transferred the case, and that the interests of justice would be better served by denying this motion because this Court has some familiarity with the case, because this Court has a relatively lighter caseload, and because the expected time to trial would be shorter.

With regard to costs, it appears that granting the motion would reduce certain costs, such as the cost of air fare for witnesses to attend the trial in Delaware. It is not clear, however, whether granting the motion would result in an overall cost savings to the parties. Other factors might have an impact on overall costs, including factors such as the length of time to trial.

Wesley–Jessen argues that the interests of justice would be served by denying the motion because the Court has some familiarity with the technology in issue based on its work in the *Ciba Vision* litigation. The Court gives this argument little weight. That case was settled before the Court invested substantial time in attempting to understand the technology. Since the Court has little knowledge of the underlying technologies, no judicial resources would be saved by litigating here instead of in California.

The third factor identified by the parties, the relative caseload of the courts, suggests that the interests of justice would be served by denying the motion. It may not be fair to assume that transferring this case to the Northern District of California would lead to a delay in a trial and resolution of the dispute, or that adding this matter to another judge's docket would impose a significant incremental burden on that judge's work load. However, it is clear that this Court has the time and resources to resolve this dispute relatively promptly and that it would not serve the interests of justice to send this case to a court that is already carrying the burden of many more cases.

## CONCLUSION

For these reasons, the Court finds that Visioncare has failed to carry its burden of showing that a balancing of the interests identified in the statute tips strongly in favor of a transfer. The Court will, therefore, deny the motion and leave undisturbed the plaintiff's choice of forum.