INTEL CORPORATION, Plaintiff,

v.

BROADCOM CORPORATION, Defendant.

No. 00–796–RRM.

United States District Court, D. Delaware.

Oct. 9, 2001.

J. Andrew Huffman, Esquire, Fish & Richardson P.C., Wilmington, Delaware; John E. Gartman, Esquire and Juanita Brooks, Esquire, Fish & Richardson P.C., San Diego, California; counsel for plaintiff.

Richard H. Morse, Esquire and John W. Shaw, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Ron E. Shulman, Esquire, Michael A. Ladra, Esquire, Irwin R. Gross, Esquire, and James C. Yoon, Esquire, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; Raphael L. Lupo, Esquire and Vera Elson, Esquire, McDermott, Will & Emery, Washington D.C.; counsel for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a patent case. Plaintiff Intel Corporation is a Delaware corporation with its principal place of business in Santa Clara, California. Defendant Broadcom Corporation is a California corporation with its principal place of business in Irvine, California.

On August 30, 2000, Intel filed a complaint in this court claiming that Broadcom is infringing one or more of the claims of five of its patents directly, by inducing others to infringe, and by committing acts of contributory infringement. The five Intel patents cover three different technologies that Intel alleges intersect in Broadcom's high-speed networking and communications products. One of the patents relates to smart networking products, another relates to semiconductor chip packaging structures, and the last three relate to digital video encoding and decoding techniques. Intel alleges that Broadcom is using "Intel technology to build its business" and that virtually every Broadcom product infringes one or more of the five patents-in-suit.

On October 10, 2000, Broadcom moved to dismiss Intel's complaint or, in the alternative, to transfer the action to the United States District Court for the Northern District of California. Broadcom argues that this court lacks personal jurisdiction over it, and in the alternative submits that even if the court finds that it has jurisdiction over Broadcom, the court should use its discretion to transfer the case pursuant to 28 U.S.C. § 1404(a). The parties have been conducting discovery in the matter for the past eleven months. On September 24, 2001, the court heard oral argument on Broadcom's motion to dismiss or transfer. This is the court's decision on that motion.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the complaint and the accompanying documents, deposition transcripts, and declarations that have been submitted by the

parties along with their briefs on the issues of jurisdiction and transfer.

### A. The Parties

#### 1. Intel Corporation

Intel is the world's largest semiconductor chip manufacturer. It produces and sells chips to customers throughout the computing and communications industries that are used to run computers, servers, and networking and communications products. Intel owns a broad array of patents covering its proprietary technologies.

According to its December 31, 1999 Annual Report, Intel has approximately 70,-200 employees worldwide. Intel's major products include microprocessors, chipsets, networking and communications products, and digital imaging and other personal computer peripherals.

#### 2. Broadcom Corporation

Broadcom was founded in 1991. Broadcom is a leading provider of semiconductor chips that enable broadband communications and networking of voice, video, and data services. Its key products include cable products, high-speed networking products, and semiconductor package configurations. More specifically, Broadcom designs, develops, and supplies complete "system-on-a-chip solutions" and related applications for digital cable set-top boxes, cable modems, high-speed local, metropolitan and wide area networks, digital subscriber lines (DSL), and various other high speed networking and communications products.

As of June 2001, Broadcom has approximately 2,700 employees. In the year 2000, Broadcom sold over 88.9 million units for a total of approximately $1.15 billion in revenues. It is estimated that "Broadcom chips are now in more than 80% of all cable modems, digital cable TV set-top boxes and local area network switches sold around the world." Jay Palmer, The Bar-

ron's 500, Barron's, April 24, 2000, at 2. According to its CEO, Henry Nicholas, Broadcom's "objective is to have chips in every single television set, every single telephone, and every single computing device worldwide."

Broadcom designs its products in Arizona, California, Georgia, the Netherlands, and Singapore. The employees of Broadcom's Digital Video Technology Group, Enterprise Switching Group, and Home Networking Group are located in facilities that Broadcom leases in Sunnyvale and San Jose, California.

Broadcom primarily sells its products through its direct sales force. The Broadcom sales force is based out of offices in California, Texas, Massachusetts, Illinois, Maine, and Georgia. Broadcom does not sell its products directly to individual consumers. Rather, Broadcom sells its products to companies in the high speed communications market who then use Broadcom's products as components in their own products, which they in turn sell to corporate or individual customers throughout the world. Many of Broadcom's customers are well-known multi-national corporations that have world-wide distribution networks. These customers include 3Com, Cisco Systems, Hewlett–Packard, Motorola, Nortel Networks, Pace Micro Technology, Samsung, Scientific–Atlanta, Apple Computer, Compaq, Dell, Gateway, Thomson CE, and Comcast Cable. While Broadcom does not instruct or direct where or to whom its customers may resell products containing Broadcom components, thousands of digital set-top boxes and cable modems that contain allegedly infringing Broadcom chips are sold each year in Delaware by Broadcom customers such as Motorola, Cisco Systems, Com21, and Scientific–Atlanta.

According to its 2000 Annual Report, Broadcom's involvement with its custom-

ers often goes beyond the mere selling of products. Broadcom's business model calls for Broadcom to collaborate with its key customers to develop custom designed chips and then to help those customers design and develop products using Broadcom products. Accordingly, Broadcom assigns dedicated engineers to work with the engineers of their highest revenue customers to jointly develop semiconductor chips that are customized to work with that customer's products. Broadcom has executed agreements relating to participation in technical exchanges, joint development, and joint promotional activities with many of its customers, including Apple, Dell, Gateway, Compaq, Hewlett–Packard, Microsoft, Nortel, Pace Micro Technology, Pioneer, Samsung, Scientific–Atlanta, Motorola, Thompson CE, and 3Com. Broadcom also has entered into indemnification agreements with its customers, promising to indemnify their customers for patent infringement lawsuits "[a]nywhere they may be sued."

With the exception of Broadcom itself, Insight Electronics is the sole distributor of Broadcom products in the United States. Insight's main office is located in San Diego, California. Insight does not have an office in Delaware. Greg Provenzano, the President and CEO of Insight, stated in his declaration that as of the date this suit was filed, "Insight had not solicited any business for Broadcom in Delaware, had not received any orders for Broadcom products from companies in Delaware, had not made any sales of Broadcom products to customers in Delaware, and had not distributed any Broadcom products within Delaware."

Broadcom is also represented by an independent sales representative, New Era Sales. New Era Sales is based in Maryland and is responsible for soliciting and managing sales for Broadcom in Virginia, Maryland, West Virginia, Washington DC, and Delaware. At the time that Broadcom hired New Era Sales, Delaware was not part of New Era's regular sales territory under their agreement with Broadcom. However, Broadcom later requested that New Era expand its efforts on behalf of Broadcom to include Delaware. Phil Brant, the president of New Era Sales avers, however, that as of the filing date of this lawsuit, "New Era has not solicited any business for Broadcom in Delaware, had not obtained any orders for Broadcom products from companies located in Delaware, and had not sold or distributed any Broadcom products in Delaware."

Broadcom does not have offices, own any assets, or own or lease any property in Delaware. Broadcom is not licensed to do business in Delaware. Broadcom has not advertised in Delaware. Broadcom maintains a website at *http://www.broadcom.com* that serves as a central information service about Broadcom products and as a mechanism by which Broadcom customers can correspond with Broadcom staff by email to request information and assistance. Broadcom, however, does not directly sell its products through its website.

### B. *The Parties' Positions on the Motion to Dismiss*

#### 1. *What is Broadcom's Position on the Motion to Dismiss?*

In its opening brief, defendant Broadcom argues that Intel's complaint should be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction. In support of its motion to dismiss, Broadcom claims that, as of the filing of the complaint in this action, it had not conducted sales activities in Delaware, it has not sold any products in Delaware, and did not have any customers in Delaware.

Broadcom further argues that it has not indirectly transacted any business in Delaware within the meaning of Delaware long-arm statute. It contends that although its products reach Delaware consumers indirectly through the "stream of commerce," this contact alone is insufficient, as a matter of law, to confer jurisdiction over Broadcom because Broadcom's sales of chips outside Delaware is not an act within Delaware. *See Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F.Supp.2d 622, 626 (D.Del.1999) (hereinafter *"Siemens"*); *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F.Supp.2d 690, 696 (D.Del.1998) (hereinafter *"Silicon Storage Tech."*).

Broadcom further argues that it cannot be subject to jurisdiction in Delaware because it has not entered into any contracts to supply goods or services in Delaware, it has not caused tortious injury in Delaware that is related to the cause of action, and it has not engaged in continuous or substantial activity in Delaware.

### 2. *What is Intel's Position on the Motion to Dismiss?*

In its answering brief, Intel contends that Broadcom has sufficient contacts to support the exercise of personal jurisdiction over it in Delaware. Intel claims that Broadcom has indirectly transacted business in Delaware by cooperating with its customers to sell hundreds and thousands of allegedly infringing products that reach Delaware through the stream of commerce. Intel also claims that, contrary to Broadcom's assertions, Broadcom has directly sold and offered to sell products that allegedly infringe Intel's patents to customers in Delaware. Intel argues that pursuant to its general business plan of "connecting everything," Broadcom has purposefully and knowingly availed itself of the Delaware market through several direct sales contacts and customer relationships.

### a. *Broadcom's Contacts with Broadband Services, Inc.*

Intel asserts that, prior to the filing of this lawsuit, Broadcom offered to sell, sold, and shipped two allegedly infringing chip testing products to its customer, Broadband Services, Inc. ("BSI") in New Castle, Delaware. BSI paid $23,400 for those two products. BSI's New Castle facility is the only repair center in the country that is fully authorized to repair digital cable set-top boxes. It has been testing and repairing set-top boxes since at least the early 1980's. BSI tests and repairs about 2,000 digital set-top boxes per week in Delaware. The set-top boxes all contain Broadcom's allegedly infringing chips. Broadcom's BCM 93133 reference board, an accused product that also allegedly infringes Intel's video patents, is used in the testing of set-top boxes. BSI keeps a stock of Broadcom's digital video chips on hand in Delaware, because in the course of testing and repairs BSI sometimes needs to replace these chips. BSI orders these chips from Motorola.

Broadcom does not dispute that it shipped the two chip testing products to BSI, but asserts that it did so one day after Intel filed its complaint in this case. Both parties agree that BSI subsequently purchased two more allegedly infringing products from Broadcom for an additional $16,800 after the filing date of this lawsuit.

Intel alleges that the following facts support its contention that the sales to BSI took place on or before August 30, 2000. In connection with its use of the BCM 93133 to test and repair cable set-top boxes in Delaware, BSI required technical information about Broadcom's chips and reference design. Accordingly, BSI's director of engineering, Bob Barrett contacted Broadcom through Broadcom's website on April 27, 1999 and November 29, 1999. After using Broadcom's website to request

and obtain a password, Barrett accessed and downloaded technical documents about Broadcom's allegedly infringing products. Subsequently, in 1999 and early 2000, Barrett corresponded by email with David Heiden, Broadcom's Eastern U.S. Sales Manager, and obtained technical advice on repairing Broadcom's chips.

In early 2000, after confirming that BSI was going to use the BCM 93133's to "support repairs of Motorola's products using Broadcom chips," Heiden approved BSI as a customer. The sales department subsequently approved the offer of those specific products at a specific price. As per Broadcom's business practice, BSI first entered into a non-disclosure agreement and then entered into software license agreement that stated that BSI was "purchasing" the Broadcom reference designs. Under the software license agreement, Broadcom is obligated to provide free technical support and software updates to BSI in Delaware. On August 15, 2000, BSI sent a purchase order to Broadcom for two BCM 93133s with pre-approved prices of $15,000 for one and $8,400 for the other. On August 16, 2000, Broadcom sent to BSI an "Order Acknowledgment" accepting BSI's order. Broadcom's customer service department also sent a confirming email to BSI stating that the products were scheduled to ship to Delaware on August 25, 2000. Broadcom's standard terms and conditions indicate that a sales contract between Broadcom and a customer "becomes effective ... on the date of Broadcom's acknowledgment." On August 30, 2000, the date Intel filed this lawsuit, Broadcom shipped the two BCM 93133s to Delaware, as shown by Broadcom's packing slip. Either with or before the August 30 shipment, Broadcom provided BSI with an "Advance Reference Design Specification" for the BCM 93133 and a user manual for the BCM 93133 complete with schematics of Broadcom's product.

b. *Broadcom Contacts with Autotote and Comcast Cable*

Intel further alleges that Broadcom has engaged in other offers, sales, and business activities with companies in Delaware such as Autotote and Comcast Cable. However, there are fewer supporting facts regarding these alleged contacts than with BSI.

Autotote is located in Newark, Delaware. On April 12, 1996, Broadcom entered into a non-disclosure agreement with Autotote. The agreement provided that Autotote and Broadcom would exchange information relating to Broadcom's allegedly infringing products that Autotote would use "for the purpose of evaluat[ion]." Intel asserts that given Broadcom's general operating procedure to only allow a customer to sign a non-disclosure agreement after the sales department approves an offer of a specific product at a specific price, Broadcom has at least made an offer to sell its products to Autotote.

Comcast is the third largest cable operator in the world. It is a Delaware corporation with its principal executive offices in Wilmington, Delaware. Comcast has additional offices throughout Delaware. As of December 31, 2000, Comcast cable operations served approximately 7.5 million subscribers in the United States. As of April 21, 2001, Comcast had approximately 223,023 subscribers in Delaware. Comcast has installed approximately 35,300 digital set-top boxes containing allegedly infringing Broadcom chips in New Castle and Kent counties in Delaware. According to Intel, Broadcom has known for many years that Comcast uses Broadcom's chips in its cable boxes. On May 24, 2000, Broadcom's Dave Heiden provided technical product information and product price quotes for four Broadcom products to Comcast in Delaware in response to an email request. Those products, the BCM 93160, the BCM

93180, the BCM 93137, and the BCM 93133 are video encoding and decoding boards. As noted above, Intel has listed the BCM 93133 as an accused product that allegedly infringes two of its video patents. According to the email, the prices of the four boards varied between $5,000 to $15,000. In the email, Heiden indicated that "leadtimes are 3–4 weeks" and informed Comcast that it could issue purchase orders to its distributor, Insight Electronics. Also, on January 20, 2000, Heiden responded to an email from Jim Barnes, an application engineer from Comcast Cable, Delaware, which sought technical advice relating to the BCM 93133.

Additional emails and Broadcom executive strategy documents indicate that part of Broadcom's business plan is to focus on building and maintaining relationships a number of cable operators, including Comcast. In the late 1999 and early 2000 time frame, Broadcom began "active relationships" with these cable companies and scheduled meetings and discussed "Broadcom's technology and how it can help their business." Deposition testimony of one Broadcom employee indicates that meetings with Comcast related to Broadcom's cable set-top box chips, such as the BCM 7100, the BCM 7010, and the BCM 7015.

Intel has listed the BCM 7010 as an accused product that allegedly infringes its semiconductor chip packaging patent. Intel has also accused a number of Broadcom's cable-modem chips such as the BCM 93350, the BCM 93310, and the BCM 93352 as allegedly infringing its chip packaging patent and its networking patent.

### c. Broadcom's Other Contacts with Delaware

Broadcom shares strategic relationships with a number of Delaware corporations, including Motorola, Cisco Systems, and Com21, Inc., and others under which it jointly develops and promotes various allegedly infringing high speed networking products, cable set-top boxes, and cable modems. Each of those customers sells thousands of its products in Delaware. Intel argues these contacts indicate Broadcom's purposeful availment of the Delaware market.

Broadcom's website system logs indicate that, through its website, Broadcom has been contacted by a number of potential or actual customers in Delaware from organizations such as ICS Cable, Inc., the University of Delaware, and Hewlett–Packard regarding sales information or technical assistance relating to Broadcom's communications products, networking products, semiconductor products, and cable set-top boxes.

Intel also notes that, despite the fact that Broadcom has only provided three months of phone logs from June 30, 2000 to October 1, 2000, in those three months Broadcom employees made 58 phone calls totaling 5 hours in length to Delaware. Broadcom has not produced any documents or witnesses regarding the content these phone calls.

## II. DISCUSSION

When a non-resident defendant's motion to dismiss challenges personal jurisdiction, the plaintiff has the burden to show the basis for the court's jurisdiction over that defendant. *Wright v. American Home Products,* 768 A.2d 518, 526 (Del.Super.2000). To satisfy this burden, Intel must make a prima facie showing that this court may exercise personal jurisdiction over Broadcom. *Id.* After discovery has begun, the plaintiff must sustain this burden by "establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984). For the purposes of deciding this motion, the court must resolve all disputed facts and view all factual

inferences in the light most favorable to the plaintiff. *Wright*, 768 A.2d at 526.

■ The determination of whether Broadcom is subject to personal jurisdiction requires a two-part analysis. First, the court must examine whether the language of the Delaware long-arm statute, 10 Del. C. § 3104(c), reaches the defendant. Second, if the court finds that Broadcom's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting Broadcom to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment. *See Silicon Storage Tech.*, 20 F.Supp.2d at 694.

A. *Do Broadcom's Actions Fall within the Language of the Long–Arm Statute?*

The first step of the jurisdictional inquiry is to determine whether there is a statutory basis for jurisdiction. In applying the Delaware long-arm statute, the court defers to the interpretations of the Delaware state courts. *Id.* at 694 (citing *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed.Cir. 1998)). The Delaware Supreme Court has stated that Delaware's long-arm statute should be "broadly construed … to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.1986).

Intel contends that there is a statutory basis for asserting jurisdiction over Broadcom and bases that contention on three separate subsections of the Delaware long-arm section. First, Intel claims Broadcom is subject to jurisdiction under 3104(c)(1) because Broadcom transacts business in Delaware. Second, Intel claims that jurisdiction is also proper under 3104(c)(2) because Broadcom has contracted to supply things to customers in Delaware. Last, Intel claims that 3104(c)(4) confers juris-

diction over Broadcom because Broadcom causes tortious injury in Delaware under the meaning of that subsection.

The relevant sections of the statute follow:

[A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

.    .    .    .    .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

. . . .

10 Del. C. § 3104(c).

1. *Does § 3104(c)(1) authorize the court to exercise jurisdiction over Broadcom?*

■ Intel first contends that Broadcom is subject to jurisdiction under section 3104(c)(1) of the Delaware long-arm statute. That section provides for jurisdiction over non-residents who transact business in Delaware. *See* 10 Del. C. § 3104(c)(1). Delaware state courts have interpreted section 3104(c)(1) to be a specific jurisdiction provision of the Delaware long-arm statute. *Outokumpu Eng'g, Enters., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del.Super.1996). Specific jurisdiction requires that there be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See Helicopte-*

*ros Nacionales de Colombia S.A. v. Hall et al.,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1155 (Del.Super.1997).

Intel claims that Broadcom has both direct and indirect contacts that are sufficient to satisfy section 3104(c)(1). Intel first asserts that the factual record sufficiently demonstrates that Broadcom has directly sold or offered to sell allegedly infringing products to customers in Delaware such as BSI, Autotote, and Comcast Cable. Intel contends that these direct sales and offers for sale to Delaware establish prima facie grounds for jurisdiction. *See C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 559 (D.Del.1998).

Intel alternatively argues that if the court were to find Broadcom's direct contacts insufficient to impose jurisdiction, Broadcom's indirect contacts would be sufficient to confer jurisdiction under the "stream of commerce theory" because the allegedly infringing semiconductor chips that Broadcom manufactures, sells, and delivers to its customers reach Delaware indirectly through the stream of commerce when those customers sell their products containing the Broadcom chips in Delaware. *See, e.g., Motorola v. PC–Tel Inc.,* 58 F.Supp.2d 349 (D.Del.1999); *Boone,* 724 A.2d at 1157–58. In support of this theory of jurisdiction, Intel argues that Broadcom has entered into agreements with customers that contemplate the customers' sale of Broadcom's products worldwide, including Delaware. Furthermore, Intel claims that the factual record demonstrates that Broadcom intentionally and purposefully directs its acts towards Delaware through its general business plan to solicit business in Delaware. *See Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 276 (D.Del.1993) (finding that to meet requirements of § 3104(c)(1) act must be

directed at residents of Delaware and protections of Delaware laws).

In its briefs Broadcom argues that its alleged contacts with BSI, Comcast, and Autotote are insufficient to confer jurisdiction under section 3104(c)(1), because none of its actions physically took place "in Delaware." *See Siemens,* 69 F.Supp.2d. at 626 (section 3104(c)(1) "require[s] that some action by the defendant occur within Delaware"). Broadcom also asserts that Broadcom's shipments to BSI are irrelevant because they occurred after the filing date of this case, that Intel's assertions with respect to transactions with Comcast in Delaware are factually unsupported, and that Broadcom's signing a non-disclosure agreement with Autotote indicates nothing about any actual or contemplated sales activity between Broadcom and Autotote in Delaware.

With respect to Intel's "stream of commerce" argument, Broadcom relies heavily on this court's opinions in the *Siemens* and *Silicon Storage Tech.* cases as support for its contention that the contacts alleged by Intel are insufficient to impose jurisdiction. Because both parties rely on this court's decisions in *Siemens* and *Silicon Storage Tech.* in their arguments regarding the sufficiency of Broadcom's direct and indirect contacts, it will be helpful to briefly review those cases in order to frame the court's analysis.

In *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690 (D.Del.1998), Intel sued Silicon Storage Technologies for patent infringement. Silicon Storage had 184 employees and revenues of $55 million. It sold 86% of its products overseas. While conceding that Silicon Storage made no direct sales of its products into Delaware at the time of the filing of the suit, Intel argued that the availability of Silicon Storage's allegedly infringing chips through its regional distributors, its national advertis-

ing of the products, its solicitation of one prospective customer by shipping that customer a "data book," and a direct sale of one product to Intel's local counsel after the complaint was filed demonstrated a consistent course of conduct that should expose Silicon Storage to jurisdiction in Delaware. Intel also argued that Silicon Storage should be subject to jurisdiction in Delaware because its products reach Delaware through the stream of commerce. In that case, however, Intel apparently conducted very little discovery to determine whether Silicon Storage parts were actually present in Delaware at all. The court held that the isolated contacts listed by Intel, which did not include any pre-complaint sales to customers in Delaware, did not rise to the level of "transacting business" in Delaware because Silicon Storage's contacts with Delaware were not part of a "general business plan" and did not "tangibly impinge" on the plaintiff's rights. *Silicon Storage Tech.*, 20 F.Supp.2d at 690 (quoting *Thorn EMI*, 821 F.Supp. at 274). With respect to Intel's stream of commerce argument, the court held that even when resolving all disputed facts and inferences in Intel's favor Intel had "failed to set out specific facts on the record indicating that allegedly infringing [Silicon Storage] parts are actually present in the District of Delaware." This compelled the court to conclude that there was no factual basis to support Intel's stream of commerce argument. *Id.* at 698.

In *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F.Supp.2d 622 (D.Del.1999), another patent infringement case involving semiconductor chips, Siemens sued LG Semicon and its U.S. subsidiary. Again in that case, the court noted that at the time of the filing of Siemens' complaint, it appeared from the record that LG Semicon had not sold its allegedly infringing DRAM chips in Delaware "either directly or indirectly through its distributor or sales representatives." *Siemens*, 69 F.Supp.2d at 624. Therefore, Siemens relied completely on the stream of commerce theory in arguing that there was a statutory basis for jurisdiction. Siemens claimed that LG Semicon was transacting business in Delaware because LG Semicon's chips were incorporated into customers' products that were ultimately sold to consumers in Delaware. In holding that section 3104(c)(1) did not authorize jurisdiction over LG Semicon, the court noted that to transact business within the meaning of subsection (c)(1) requires "some action by the defendant to occur within Delaware" and that where a manufacturer has no general presence in Delaware, the mere transfer of ownership of goods to a third party outside Delaware is not considered to occur "in Delaware." *Id.* at 626.

With these cases, the parties' arguments, and the factual record in mind, the court must conduct a fact-specific inquiry to determine if Broadcom's actions are sufficient to constitute "transacting business" in Delaware under section 3104(c). *Id.* at 625.

a. *Are Broadcom's direct contacts with Delaware sufficient to confer jurisdiction under § 3104(c)(1)?*

Before addressing the parties' legal arguments, the court must resolve the parties' factual dispute regarding Broadcom's sales to BSI. Intel contends that Broadcom sold or at least offered to sell two BCM 93133 reference boards to BSI, a Delaware company, before April 30, 2000, the filing date of this lawsuit. Broadcom, however, contends that according to its database, the products were shipped on August 31, 2000, which would be after the filing of this lawsuit and therefore outside the allowable time frame that can be considered for determining whether Broadcom is subject to jurisdiction. In the procedural posture of a motion to dismiss, the court must resolve

all disputed facts and view all factual inferences in the light most favorable to the plaintiff. *Joint Stock Soc'y v. Heublein, Inc.*, 936 F.Supp. 177, 192–93 (D.Del.1996); *Wright*, 768 A.2d at 526.

As described in Section I.B. 2. a., Intel's contention that Broadcom offered to sell and indeed sold two reference boards to BSI prior to the filing date is well supported by the factual record. The court therefore finds that Broadcom offered to sell and did sell the boards to BSI before Intel filed this case. Accordingly, the court will consider these direct sales in determining whether Broadcom transacted business in Delaware within the meaning of 3104(c)(1).

■ In this case, in contrast to *Silicon Storage Tech.* and *Siemens*, Intel has demonstrated that Broadcom has, at least on one occasion before the filing date, sold allegedly infringing products to customers in Delaware. Broadcom also sold two additional allegedly infringing products to BSI after the filing date. While Broadcom asserts that these sales are irrelevant for purposes of jurisdiction, the court disagrees. Because patent infringement involves the "continuous infliction of injury upon the victim," where there is some evidence of pre-filing contacts, post-filing sales are relevant to the court's determination of jurisdiction. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed.Cir.1994).

The patent infringement statute under which Intel raises its claims reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." 35 U.S.C. § 271(a). Therefore, like sales, offers to sell an allegedly infringing product must be considered when determining whether a defendant's conduct is "part of a general business plan" that and whether it "tangibly impinge[s]" on the plaintiff's rights. *Silicon Storage Tech.*, 20 F.Supp.2d. 690, 695 (quoting *Thorn EMI*, 821 F.Supp. at 275).

According to the factual record, Broadcom provided technical product information and product price quotes for allegedly infringing Broadcom products to Comcast in Delaware via email and instructed Comcast to contact its distributor to purchase the products. While Broadcom cites *Silicon Storage Tech.* for the proposition that the mere ability to respond to customer orders and inquiries does not give rise to jurisdiction in Delaware, the court's statements in *Silicon Storage Tech.* were made in the context of evaluating whether the existence of a channel of distribution that potentially could serve Delaware customers was sufficient to be considered "continuous and substantial" as required by the general jurisdiction provision of 3104(c)(4). *Id.* at 699. This court finds that actual contacts by email with people in Delaware, in which Broadcom offers to sell allegedly infringing products to Delaware, are relevant in determining whether Broadcom "transacted business" in Delaware under section 3104(c)(1).

■ Broadcom's contacts with Delaware that relate to allegedly infringing products in this case are not isolated or minimal. Broadcom has had a long-standing relationship with Comcast at the executive, the sales, and the technical support levels. Broadcom hired New Era Sales to solicit sales in Delaware. In an attempt to sell products, Broadcom's Eastern U.S. Sales Manager, David Heiden, corresponded with customers in Delaware by email. Broadcom allowed customers in Delaware to download through its website technical documentation about its allegedly infringing products. Broadcom sold allegedly infringing products to BSI in Delaware both before and after the filing date of this case.

This factual record reveals that Broadcom, through its general business strategy,

intended to and did transact business in Delaware. Moreover, although the court need not consider whether Broadcom's indirect contacts with Delaware through the stream of commerce are alone sufficient to confer jurisdiction, the additional contacts that Intel discusses in its arguments regarding stream of commerce are relevant for the limited purpose of further demonstrating the scope of Broadcom's business connection to the Delaware market. The court finds that Broadcom's contacts with Delaware are sufficient to give rise to jurisdiction under section 3104(c)(1) of the Delaware long-arm statute.

Broadcom next argues that if the court finds jurisdiction under section 3104(c)(1), the court may only assert specific jurisdiction with respect to the specific infringing product that was sold to BSI, the BCM 93133. While Broadcom correctly claims that the scope of § 3104(c)(1) is limited to claims that are related to the conduct used to assert jurisdiction, *see LaNuova*, 513 A.2d at 768, the court disagrees that the scope of the court's jurisdiction in this case is limited to claims that relate to the BCM 93133.

First, the sales to BSI are not the only facts that the court relies on in finding that Broadcom transacted business in Delaware within the meaning of section 3104(c)(1). The factual record constructed by Intel documents other Broadcom contacts to Delaware including, most significantly, Broadcom's extensive business relationship with Comcast, a Delaware-based company that sells throughout Delaware thousands of cable-modems and cable set-top boxes that contain allegedly infringing Broadcom products. Second, the requirement that the defendant's conduct in the forum be related to each of the plaintiff's claims does not demand that once a plaintiff has identified sufficient activity to constitute transacting business in a state that it may only assert claims against the specific products that it alleges were directly sold by the defendant in the forum state. It would be far too onerous a burden to require Intel to demonstrate that Broadcom transacts business in Delaware with respect to every one of the accused products.

Rather, the relatedness requirement only provides that the plaintiff cannot assert personal jurisdiction over a defendant on claims that are unrelated to the defendant's jurisdictional contacts. For example, unless the court determined that Broadcom was subject to general jurisdiction in Delaware (which the court need not consider in this case), Intel could not use Broadcom's specific contacts with Delaware that support its patent infringement claims to assert personal jurisdiction over Broadcom with respect to unrelated contract or tort claims that did not arise out of those transactions in Delaware. *See, e.g., Debreceni v. Bru–Jell Leasing Corp.*, 710 F.Supp. 15, 19 (D.Mass.1989) (noting that "[w]here a complaint contains two claims, only one of which arises under federal law, there must be an independent basis for the assertion of personal jurisdiction over each claim"); *see also U.S. v. Consolidated Rail Corp.*, 674 F.Supp. 138, 142 (D.Del.1987).

In this case, each of Intel's claims is sufficiently related to Broadcom's jurisdictional connection with Delaware because each of Intel's patent infringement claims implicates one or more Broadcom products that Broadcom transacted business with regard to in Delaware by selling, offering to sell, or otherwise engaging in conduct with Delaware customers that rises to the level of transacting business. *Cf. Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362–63 (Fed.Cir.2001) (reviewing district court's dismissal based on Federal Circuit law because "the jurisdictional question at issue here is 'intimately involved with the

substance of the patent laws' " and noting that remaining patent infringement causes of action "sufficiently arise out of the same set of operative facts to vest the district court with pendent personal jurisdiction"); *see generally,* 4 Wright & Miller Federal Practice and Procedure § 1069.2 (2000). Accordingly, the court finds that it has jurisdiction over Broadcom with respect to all of Intel's infringement claims.

Because this court finds that Broadcom's direct contacts with Delaware are sufficient to provide a statutory basis for the assertion of jurisdiction under § 3104(c)(1) of the Delaware long-arm statute, it is unnecessary for the court to consider Intel's alternative arguments that Broadcom is also subject to jurisdiction under sections 3104(c)(2) and 3104(c)(4).

### B. *Does the Court's Assertion of Personal Jurisdiction Comport With Due Process?*

■ The second part of the court's inquiry is to determine whether asserting jurisdiction comports with constitutional due process. As noted by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), due process requires that a defendant must have sufficient minimum contacts with the forum state such that "maintenance of the [law]suit does not offend 'traditional notions of fair play and substantial justice.' " More recent Supreme Court precedent has indicated that to satisfy this requirement, the defendant must purposefully avail itself of the benefits of the forum state such that it is able to reasonably foresee that is might be "haled before a court" in the forum as a result of its conduct. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ Because Broadcom has directly sold allegedly infringing products in Delaware, the law is clear that Delaware may constitutionally exercise personal jurisdiction over it. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that under the minimum contacts prong, "even a single act can support jurisdiction" and that jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State."). Moreover, in addition to Broadcom's direct sales, Broadcom had hired a sales representative who was charged with using its best efforts to solicit sales in a five-state territory that included Delaware. Deposition testimony also indicates that Broadcom appeared to have known that its products were being distributed in Delaware both directly and indirectly through the stream of commerce. In sum, Broadcom's connections to Delaware customers are such that Broadcom "should reasonably have anticipated being brought into court [here]." *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. 559.

■ Generally, cases in which maintaining a lawsuit would offend constitutional due process despite the existence of a statutory basis for jurisdiction are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. *See Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. The court concludes that litigating in Delaware would not place such a substantial burden on Broadcom that would violate Broadcom's due process rights. Broadcom has not shown that it does not have the resources to fairly litigate this case in Delaware. Moreover, Delaware has an important interest in pro-

tecting the property rights of its citizens, of which Intel is one. Therefore, the court finds that because Broadcom directed activities toward Delaware and purposefully availed itself of Delaware law, the court's assertion of jurisdiction over Broadcom comports with due process.

### C. Should the Court Transfer the Case to The Northern District of California?

Broadcom next argues that, should the court determine that it can properly exercise jurisdiction in this case, the court should nonetheless grant a discretionary transfer of the case to the Northern District of California because a transfer "would promote the convenience of the parties and witnesses and would be in the interest of justice." 28 U.S.C. § 1404(a). Intel argues that transfer is improper because Broadcom has not made a prima facie showing that it is entitled to a transfer and because the court should defer to Intel's rational choice of forum.

■■■ Broadcom bears the burden of proof to demonstrate that the balancing of interests favors transfer. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). Because the plaintiff's rational choice of forum should not be lightly disturbed, " 'a transfer is not to be liberally granted.' " *Id.* (citation omitted) Third Circuit case law indicates that "[u]nless the balance is strongly in favor of transfer, plaintiff's choice of forum should prevail." *Id.*

■■■ Broadcom argues that because Intel's "home-turf" is in California, its "choice of forum is not entitled to much weight in this case." The court disagrees. This court has stated, and restates now, that "the 'home turf' rule does not create irrebuttable presumptions for or against a transfer pursuant to § 1404(a), and it does not alter a defendant's burden of proof to show that such a transfer is warranted."

*Joint Stock Soc'y,* 936 F.Supp. at 187. This court has recognized that it is rational for Intel to choose to litigate in Delaware because it is incorporated here. *Id.* Additionally, Delaware has an interest in protecting the rights of its citizens. Moreover, Intel correctly asserts that it may rationally choose Delaware as a forum to litigate "based on the court's light docket and relatively quick case disposition time." *Id.*

■■■ Broadcom is a multi-billion dollar company that does business on an international scale. Furthermore, the conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden Broadcom must "establish that litigating this case in Delaware will pose a 'unique or unusual burden' on [its] business operations." *Id.* at 188–89 (quoting *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D.Del.1993)). It has not done so.

Furthermore, the court finds that judicial economy does not militate in favor of transferring the case. Broadcom argues that this case is just one of many cases that is pending between the parties in California and that efficiency demands that these cases be consolidated there. However, all of the patent infringement cases now pending in the Northern District are declaratory judgment actions that were filed by Broadcom after Intel filed this case in Delaware and are currently stayed pending the court's decision on this motion. Broadcom cannot frustrate Intel's choice of forum by arguing that the court must transfer the case to another district where Broadcom later filed declaratory judgment actions. The parties have been litigating in Delaware for the past year and a trial date is set for the end of

November. Ordering a transfer of the case at this point would merely delay the resolution of this dispute.

Accordingly, for the reasons stated, the court will deny Broadcom's Motion to Dismiss or in the Alternative to Transfer Venue. The court will enter an order in accordance with this memorandum opinion.