**CHASE MANHATTAN BANK, USA, N.A., Plaintiff,**

v.

**FREEDOM CARD, INC. and Urban Television Network, Inc., Defendants.**

**No. Civ.A. 03–217–KAJ.**

United States District Court, D. Delaware.

April 14, 2003.

James Gordon McMillan, III, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff.

Joelle Eileen Polesky, Smith, Katzenstein & Furlow, Wilmington, DE, for Defendants.

## MEMORANDUM ORDER

JORDAN, District Judge.

The race may not always be to the swift, but sometimes it is, as this case demonstrates. This matter is before the Court on two motions resulting from the parties' efforts to bring to Court their dispute regarding the rights to market credit cards using the word "freedom" as part of the card name. Plaintiff Chase Manhattan Bank USA, N.A. ("Chase") filed suit first and now seeks to enjoin defendants Urban Television Network, Inc. and Freedom Card, Inc. (collectively "UTN" or the "Defendants") from pursuing in the United States District Court for the Southern District of New York a second filed action (the "New York case") involving the same operative facts. (Docket Item ["D.I."] 5.) UTN, which filed its action later on the same day that Chase filed this case, has filed a motion to dismiss the case in this Court or to have it transferred to the Southern District of New York, presumably for consolidation with the New York case. (D.I.12.) The motions have been fully briefed and were argued to the Court on April 11, 2003. Following oral argument, the Court ruled from the bench, granting Chase's motion to enjoin UTN from pursuing the New York case and denying UTN's motion to dismiss or to transfer.[1] (See April 11, 2003 Trans. at 55.) This Order sets forth the rationale for the Court's ruling.

## I. BACKGROUND AND PROCEDURAL HISTORY

Chase is a financial institution organized as a National Association under the laws of the United States and has its principal place of business in Newark, Delaware. (D.I. 1 at ¶ 2.)[2] According to an affidavit submitted by its President, Chase focuses its business efforts on retail lending, including the issuance of consumer credit cards. (D.I. 7 at ¶ 3.) In addition to having its headquarters in Delaware, Chase has based all 1,800 of its employees in Delaware.[3] (Id. at ¶ 4.) Both of the defendants in this case are Delaware corporations with their principal place of business in

1. The Court had also denied UTN's motion to stay this action (see D.I. 16) pending a decision in the New York case on an application by UTN to require the parties' dispute to be litigated there. (See Mar. 31, 2003 Teleconf. Tr. at 3–5.)

2. For purposes of this Order, the Court accepts as true the well-pleaded allegations of the Complaint. In addition, the Court relies upon affidavits and appendices submitted by the parties.

3. Chase acknowledges that it has on-going relationships with related entities that operate in several other jurisdictions. (D.I. 7 at ¶¶ 5–6.)

Marina Del Rey, California. (D.I. 1 at ¶ 2; D.I. 13 at A1–A2, ¶¶ 1–2.)

Chase filed this action on February 24, 2003, alleging that, in a series of communications from January 27 through January 29, 2003, UTN had asserted that Chase's use of the name "Chase Freedom" as the designation for one of Chase's credit cards violated UTN's state and federal rights to the words "Freedom Card" as a protected trademark. (*See* D.I. 1 at ¶¶ 18–19.) Chase had begun using that card name in mid-January of 2003 to market the reissue of 2.6 million credit cards to some 1.7 million card holders. (*Id.* at ¶¶ 9–10.)

The parties are not strangers to each other. In January of 1999, Chase and one of the Defendants, Freedom Card, Inc.,[4] entered into a confidentiality agreement (the "Confidentiality Agreement") to facilitate "discussions with each other in connection with a prospective business arrangement" involving consumer credit cards. (D.I. 7, Ex. B; D.I. 1 at ¶ 21.) While it seems the prospective business arrangement never materialized (*see* D.I. 1 at ¶ 21; D.I. 7 at ¶ 22), the parties did covenant, as part of the Confidentiality Agreement, that

each party irrevocably (a) submits to the exclusive jurisdiction of the state and/or federal courts in the State of Delaware; (b) waives any objection which it may have at any time to the venue of any suit, action or proceeding arising out of or relating to this agreement brought in such court; (c) waives any claim such suit, action or proceeding is brought in an inconvenient forum and further irrevocably waives the right to object, with respect to such claim, suit, action or proceeding brought in such court, that

such court does not have jurisdiction over such party; and (d) waives its right to a trial by jury.

(D.I. 7, Ex. B at ¶ 11.)

On January 28, 2003, the Chairman and CEO of Freedom Card, Inc. sent a letter to someone identified as being with the "Chase Legal Department," asserting that Chase was infringing marks belonging to Freedom Card, Inc. and that "the actions of Chase could easily be determined to be in violation of the mutual confidentiality and non-disclosure agreement that was executed between FreedomCard, Inc. [sic] and Chase in 1999 . . . ." (D.I.7, Ex. A.) The parties apparently engaged in negotiations to resolve their differences but, after the Defendants failed to respond by a specified deadline to a February 21, 2003 settlement offer from Chase, Chase immediately filed suit in this Court. The Defendants also promptly filed the New York case, but arrived at the courthouse an hour and a half after Chase filed its papers here. (*See* D.I. 13 at 13.)

Chase seeks a declaratory judgment that it has not infringed any of UTN's alleged rights to use of the words, "Freedom Card." (D.I. 1 at ¶¶ 26–28.) It also seeks a declaratory judgment that it has not breached the Confidentiality Agreement between the parties. (*Id.* at ¶¶ 30–33.) UTN's complaint in the New York case is based on essentially the same set of facts but, in addition to naming Chase as a defendant, it also names a related entity, J.P. Morgan Chase & Co. ("J.P.Morgan"), and it couches its claims as "Federal Trademark Infringement" (D.I. 13 at A6–A8, ¶¶ 48–57), "Federal Trademark Infringement—Reverse Confusion" (*Id.* at A8–A9, ¶¶ 59–68), "Common Law Trade-

---

**4.** Defendants Freedom Card, Inc. and Urban Television Network, Inc. are apparently related entities and have, in their complaint in the New York action (*see* D.I. 13 at A1) treated themselves as identically situated with respect to their alleged rights and claims against Chase and an entity related to Chase.

mark Infringement" (*Id.* at A9–A10, ¶¶ 70–76), "Common Law Trademark Infringement—Reverse Confusion" (*Id.* at A10–A11, ¶¶ 78–84), "Federal Unfair Competition" (*Id.* at A11–A12, ¶¶ 86–92), "Common Law Unfair Competition" (*Id.* at A12–A13, ¶¶ 94–99), "Common Law Palming Off" (*Id.* at A13–A14, ¶¶ 101–107), "Reverse Common Law Palming Off" (*Id.* at A14–A15, ¶¶ 109–115), and "Civil Conspiracy" (*Id.* at A15–A16, ¶¶ 117–119).

## II. *DISCUSSION*

### A. *Law*

When reviewing a motion to enjoin a second suit involving the same basic facts, the Court is guided by the Third Circuit's "first-filed" rule, which states that, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat) 532, 535, 6 L.Ed. 152 (1824)), *cert. denied*, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). ·The policy underlying that rule is at least two fold and eminently practical. For the benefit of litigants, "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should ... be free from the vexation of subsequent litigation over the same subject matter." *Id.* at 930. For the benefit of courts and the public they serve, "[c]ourts already heavily burdened with litigation with which they must of necessity deal should ... not be called upon to duplicate each other's work involving the same issues and the same parties." *Id.*

■ The first-filed rule "has served to counsel trial judges to exercise their dis-

cretion by enjoining the subsequent prosecution of 'similar cases ... in different federal district courts.' " *E.E.O.C. v. University of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). While the first-filed rule "is not a rigid or inflexible rule to be mechanically applied[,]" *id.* at 976, only in "rare or extraordinary circumstances" should the first-filed action give way to one filed later. *Id.* at 972. Such circumstances include "inequitable conduct, bad faith, or forum shopping." *Id.*

■ On a motion for transfer of venue under 28 U.S.C. § 1404(a),[5] the burden falls upon the movant to demonstrate that the convenience of the parties, the convenience of the witnesses, and the interest of justice are served by transfer. *See Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F.Supp. 759, 762 (D.Del., 1991) (movant "bears the burden of proving that justice requires a substitute forum and a transfer is not to be liberally granted"). "Because the plaintiff's rational choice of forum should not be lightly disturbed, a transfer is not to be liberally granted." *Intel Corp. v. Broadcom Corp.*, 167 F.Supp.2d 692, 706 (D.Del. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970); internal quotes omitted). "Unless the balance is strongly in favor of transfer, plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

### B. *Analysis*

#### 1. Motion to Enjoin

In support of its motion to enjoin the defendants from proceeding with the New York action, Chase argues that this jurisdiction is a more appropriate forum for the

---

5. Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

dispute because suit was first filed here, Chase is headquartered in Delaware, Chase's credit card business, including business involving the "Chase Freedom" credit card, is based in Delaware, both Defendants are Delaware corporations, and, according to the parties' own Confidentiality Agreement, Delaware is the exclusive venue for all disputes arising out of or relating to the Confidentiality Agreement. (*See* D.I. 6 at 2.)

In opposing Chase's motion to enjoin prosecution of the New York action and in support of its own motion to dismiss or transfer, UTN does its best to tie the dispute and the parties' relationship to New York. It asserts that the Confidentiality Agreement was executed in connection with a meeting that took place in New York with representatives of Chase that reside in New York and with representatives of J.P. Morgan who also are New York residents. (*See* D.I. 18 at 3.) It claims that because the "Chase Freedom" card includes the word "Chase," which is a registered trademark owned by J.P. Morgan, the litigation must include J.P. Morgan as a necessary party. (*Id.* at 3–4, 6.) It also argues that the claims it has asserted in the New York case are different than the ones asserted by Chase in this case. (*Id.* at 8–9.)

What UTN ignores, however, are the following three factors, which Chase has properly emphasized. First, UTN itself initiated this dispute by effectively threatening Chase with suit both with respect to UTN's alleged trademark rights *and* with respect to an alleged breach of the Confidentiality Agreement. (*See* D.I. 7, Ex. A.) Any dispute over the Confidentiality Agreement can only be decided in a state or federal court within Delaware, according to the parties explicit agreement. (*See* D.I. 7, Ex. B at ¶ 11.) Thus, to resolve all of the matters which UTN itself put at issue between the parties, suit is more properly brought in this district than in New York.

Second, J.P. Morgan does not appear to be a necessary or indispensable party in this litigation, at least not at this juncture and under the standards of Federal Rule of Civil Procedure 19, because the only basis UTN has advanced for that proposition is J.P. Morgan's status as the owner of trademarks using the "Chase" name. (*See, e.g.,* D.I. 13 at 10–11; D.I. 18 at 6–7.) That is an unpersuasive basis for argument because the alleged infringement is of UTN's mark, not a mark owned by J.P. Morgan.[6] Unlike the case of *Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, S.A.,* 196 F.R.D. 306 (E.D.Mich.2000), upon which UTN heavily relies, J.P. Morgan at this point in time has not asserted any ownership rights in the mark in question. *See id.* at 308 (absent trademark owner deemed to be a necessary party because of its status as the owner of the precise mark in dispute). There is no allegation that J.P. Morgan claims any ownership at all in the mark "Freedom Card" or, for that matter, in the words "Chase Freedom."[7] The Complaint

---

**6.** UTN does not allege that there is a trademark registration for "Chase Freedom," and it admits that there is no pending application for such a registration. (D.I. 18 at 4.)

**7.** At oral argument, however, Chase did not disavow any claim to trademark rights in the words "Chase Freedom." (*See* April 11, 2003 Hearing Tr. at 47.) It does not follow that J.P. Morgan will claim a right in those words,

should they become an enforceable trademark. The Defendants assert that it must be assumed that J.P. Morgan will ultimately claim rights in a "Chase Freedom" mark, since J.P. Morgan is the holding company which holds the rights to all the trademarks using the "Chase" name. Whether or not that is true, the Court is not prepared to issue rulings based on the assumptions the Defen-

speaks of Chase, not J.P. Morgan, using the words "Chase Freedom" in connection with the issuance of the allegedly infringing credit cards. (*See* D.I. 1 at ¶¶ 8–13.) Moreover, even if it were the case that J.P. Morgan is a necessary party, there has been no argument by UTN that J.P. Morgan, which is a Delaware holding company, could not be added to this action.

Third, despite the variety of legal labels UTN attaches to its claims, the same facts are at issue between the parties in both suits. At bottom, this case and the New York case are based on the dispute outlined by the Chairman and CEO of defendant Freedom Card, Inc. in his January 28, 2003 letter to Chase. (*See* D.I. 7, Ex. A.) The issues of fact will not be different in any significant degree, whether the dispute is resolved here or in New York.

UTN has not made a showing that Chase's choice to file suit in this Court was motivated by inequitable conduct, bad faith, or forum shopping. The choice of forum appears both rational and, in light of the parties' previously expressed preference for Delaware as the forum for dispute resolution, entirely appropriate. Indeed, given the statement by Freedom Card, Inc.'s lead executive that violations of the Confidentiality Agreement are at issue, Chase's choice of this forum can be viewed as a selection it was bound to make.

### 2. Motion to Transfer [8]

The foregoing discussion lays out several reasons why the case at bar should remain here. In deciding the Defendants' motion to transfer, the Court is further guided by the Third Circuit's opinion in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir.1995), which set forth examples of several public and private interests a court may consider when analyzing the propriety of transfer. The private interests include the plaintiff's forum preference "as manifested in the original choice," defendant's preference, and whether the claim arose elsewhere. *Id.* at 879 (citations omitted). The public interest factors include, "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interests in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

The "private interests" set forth in *Jumara* weigh against transfer. As already noted, Chase's choice of forum is certainly

---

dants are pressing. For now it is sufficient to note that there has been no evidence adduced that J.P. Morgan owns or claims ownership of "Freedom Card" or "Chase Freedom".

**8.** The Defendant's transfer motion is couched in the alternative, seeking dismissal of Chase's first-filed action as the primary request for relief. (*See* D.I. 12; D.I. 13.) The basis alleged for dismissal is that Chase improperly invoked this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). (D.I. 13 at 13–17.) This aspect of the Defendant's motion warrants no more than a footnote. The Defendants acknowledge that they had threatened legal action (*id.* at 14–15) and that the purpose of the Declara-

tory Judgment Act is "to enable a person caught in a controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993) (quoted by Defendants at D.I. 13 page 14). Yet they assert that the Court should view as "trivial and insubstantial" any argument by Chase that it filed suit to bring the parties' dispute to resolution. What few facts there are before the Court, especially the presence of the Confidentiality Agreement as one of the matters potentially in dispute when suit was filed, indicate that Chase's decision to file suit and its choice of this forum were not inappropriate.

rational, given that it is headquartered here, has its credit card operations here, and had previously agreed that disputes between it and UTN arising out of or related to the Confidentiality Agreement would be litigated here. The Confidentiality Agreement also serves as evidence of the Defendant's pre-litigation expression of a preferred forum. Moreover, both Defendants are Delaware corporations. "Clearly this forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws." *Motorola, Inc. v. PC–Tel, Inc.*, 58 F.Supp.2d 349, 356 (D.Del.1999).

The alleged infringement is not focused in any one jurisdiction; it is allegedly occurring throughout the United States. (*See* April 11, 2003 Tr. at 44.) What is jurisdiction specific is the source of the alleged infringement. The distribution of the Chase Freedom card is based upon operations headquartered in Delaware. (*See id.* at 11; D.I. 6 at 2.) To the point that Chase is headquartered in Delaware and makes its credit card issuing decisions in this jurisdiction, the response at oral argument by counsel for the Defendants was that, "I think it's fair to state that Chase is known as a New York thing." (April 11, 2003 Tr. at 21.) Whatever counsel's opinion about Chase's association by reputation with New York, the undisputed fact remains that Chase is headquartered in and conducts its operations in Delaware.

UTN has also failed to demonstrate that the convenience of the parties and witnesses requires transfer. Chase is headquartered here and credibly claims that Delaware is a convenient forum for it. The Defendants are both Delaware corporations. Both are based in Marina Del Rey, California, and the Defendants have not provided any sound basis for the Court to determine that it is materially different to travel to Delaware than to New York City from an airport in southern California. As to witnesses, while UTN has listed several witnesses supposedly resident in New York, it has not shown that the witnesses it ultimately may call for trial would be so inconvenienced by the relatively short trip from New York City to Wilmington that the other factors in the balance of interests would be outweighed.

Finally, the Court notes that, other than wholly conclusory statements about access to proof, the Defendants have barely referred to the public interest in their briefing or argument. (*See, e.g.*, D.I. 13 at 21–22.) It is evident that the public interest factors of *Jumara* do not support the Defendant's motion to transfer.

## III. CONCLUSION

In summary, UTN has not demonstrated that this case is of the "rare and extraordinary" kind that warrants ignoring the first-filed rule. Neither has it satisfied its burden of demonstrating that the private and public interests underlying § 1404 warrant transfer. Accordingly,

IT IS HEREBY ORDERED that

1) The Defendants' Motion To Dismiss Declaratory Judgment Action, Or In The Alternative, To Change Venue To The Southern District of New York Pursuant To 28 U.S.C. § 1404(a) (D.I.12) is DENIED; and

2) Chase's Motion To Enjoin A Second–Filed District Court Action (D.I.5) is GRANTED.